751 P.2d 957

Evan MECHAM, Governor of the State of Arizona, Petitioner,

v.

Frank X. GORDON, Jr., Presiding Officer of the Senate of the State of Arizona sitting as a Court of Impeachment; Heinz Hink, Chairman, Henry Evans, Benjamin Hanley, Chris Herstam and Jim Miller, Members, Board of Managers of the Arizona House of Representatives; Lela Alston, Jan Brewer, Peter Corpstein, Bill De Long, Tony Gabaldon, Jaime P. Gutierrez, A.V. "Bill" Hardt, John Hays, James Henderson, Jr., Jesus "Chuy" Higuera, Jeffrey J. Hill, Peter Kay, Carl J. Kunasek, Greg Lunn, Carol MacDonald, John T. Mawhinney, Jones Osborn, Manuel "Lito" Pena, Jr., Peter Rios, S.H. "Hal" Runyan, James J. Sossaman, Jacque Steiner, Alan Stephens, Wayne Stump, Jack J. Taylor, Doug Todd, Robert B. Usdane, Carolyn Walker, Tony West and Pat Wright, Members of the Senate of the State of Arizona sitting as a Court of Impeachment, Respondents.

No. CV–88–0044–SA.

Supreme Court of Arizona.

March 9, 1988.

Hiner, Crowe & Scott by Thomas N. Crowe, Phoenix, for petitioner.

Gallagher & Kennedy, P.A. by John E. Lundin, and Brown & Bain, P.A. by Paul F. Eckstein, Storey & Ross by William P. French, Phoenix, for respondents.

Nathan S. McCay, and Alice L. Bendheim, for amicus curiae Arizona Civil Liberties Foundation.

## REVISED OPINION

FELDMAN, Vice Chief Justice.

Evan Mecham, Governor of Arizona, has petitioned this Court for injunctive relief against the Arizona Senate and others. This Court generally has jurisdiction to enjoin acts of state officers. Ariz. Const. art. 6, § 5. The Governor asks us to enjoin the Senate of the State of Arizona sitting as a "Court of Impeachment" from proceeding at this time with the trial of articles of impeachment against Governor Mecham. We denied the application for an interlocutory stay, but reserved consideration of the merits of the petition. We now decline to issue the requested injunction.

## FACTS

In November 1986 Evan Mecham was elected Governor of Arizona and took office in January 1987. In January 1988 the Arizona State Grand Jury indicted the Governor for perjury (A.R.S. § 13–2702), willful concealment (A.R.S. § 13–2311) and filing a false campaign contributions and expenses report (A.R.S. § 16–912). Those criminal charges are now pending in Maricopa County Superior Court. Not long after the indictment, petitions were filed with the Secretary of State seeking recall of the Governor under the provisions of art. 8, pt. 1 of the Arizona Constitution. The Secretary of State certified that there were enough valid petition signatures to require a recall election and officially notified the Governor that he could resign from office and avoid the election. A.R.S. § 19–208.03. Because Governor Mecham refused to resign, the Secretary of State has ordered a special recall election. A.R.S. § 19–209.

On another front, the Arizona House of Representatives directed special counsel to investigate the Governor's activities. House special counsel reported that the Governor had committed several impeachable offenses. The House convened a select committee to review the documentary evidence and take the sworn testimony of several key witnesses, including the Governor. After considering the evidence, the House of Representatives adopted articles of impeachment. A.R.S. § 38–312.

Under the Arizona Constitution, impeachment by the House of Representatives temporarily removes the Governor from office and the Secretary of State becomes acting Governor. Ariz. Const. art. 5, § 6; *but see* A.R.S. § 38–322. The impeachment is then tried by the Arizona Senate. Ariz. Const. art. 8, pt. 2, § 1; A.R.S. § 38–314. If convicted by a two-thirds vote of all elected senators, the Governor is removed from office. Conviction "shall extend only to removal from office and disqualification to hold any office of honor, trust, or profit in the State." Ariz. Const. art. 8, pt. 2, § 2; *see also* A.R.S. § 38–321. Impeachment is permitted for "high crimes, misdemeanors, or malfeasance in office." Whether convicted or acquitted in the Senate, the officer impeached "shall, nevertheless, be liable to trial and punishment according to law." Ariz. Const. art. 8, pt. 2, § 2.

The Governor is obviously in a serious predicament. First, he must undergo an impeachment "trial" in the Senate. That trial has already begun and is expected to continue for some time. Second, the Governor faces a criminal trial in superior court, based on some of the same matters that are the subject of the impeachment. The criminal trial is presently scheduled to begin on March 22, 1988. Finally, he confronts a recall election, in which the Governor intends to run as a candidate against anyone who has filed valid nominating petitions. The election is set for May 17, 1988.

The Senate granted the Governor a delay of approximately one week from the date on which the impeachment trial was originally scheduled to begin. It has several times denied other requests for delay. The Governor claims that the Senate's refusal to delay the impeachment trial until the criminal trial concludes infringes his constitutional rights. In essence, these are the Governor's constitutional arguments:

1. The additional publicity generated by the impeachment trial will make it impossible to obtain an impartial jury at the subsequent criminal trial.

2. At the very least, a substantial delay will be required to let publicity subside before the criminal trial begins. This hiatus will necessarily interfere with the Governor's right to a speedy trial and his need to "clear his name" in the courthouse, the one forum he claims will truly protect his rights and give him a just hearing.

3. Delay will also be unavoidable because the Governor cannot simultaneously be in both the Senate and the county courthouse. Thus, one forum must give way to the other. The Governor argues that the only fair solution is to suspend the impeachment proceedings until the criminal trial is done.

4. The Governor will be unlawfully compelled at the impeachment proceedings to give testimony and produce evidence, all of which could later be used against

him in the criminal trial, thus violating his privilege against self-incrimination under the federal and state constitutions.

5. These, and other alleged constitutional violations, are so fundamentally unfair that they will deprive the Governor of due process of law.

The context in which the constitutional issues raised by the Governor presently appear is unique in our state's history and may be without precedent in American jurisprudence. Arizona's chief executive has brought suit in the state's highest court against the Senate, each senator, and the Chief Justice of the Supreme Court, as presiding officer of the Senate impeachment trial. His petition to this Court raises questions at the heart of our system of government. The basic issues revolve around this country's unique contribution to the theory of ordered democracy—the concept of dividing governmental power between three separate branches of government, each independent of the other, but each requiring the cooperation of the other to attain the objects of enlightened government.

Nowhere in the United States is this system of structured liberty more explicitly and firmly expressed than in Arizona. Our Constitution contains a specific clause dealing with separation of powers. In its entirety, art. 3 provides:

The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Despite this explicit delineation of governmental power, Governor Mecham argues that the Arizona Supreme Court has jurisdiction to issue the requested injunction against the Arizona Senate and its members. The Governor concedes that the separation of powers doctrine makes the legislature independent of the judiciary and free from its interference when carrying out the legislative function. However, the Gover-

nor argues that the Senate exercises judicial power once it organizes itself into a "court of impeachment" to try a public officer. This, the Governor claims, subjects the Senate to the constitutional power of the judicial branch, enabling this Court to control the Senate's actions, at least to the extent of ensuring basic fairness, applying the due process clause and forcing adherence to the rights guaranteed by the fifth and sixth amendments of the federal Constitution and this state's own Declaration of Rights.

There are two problems with the Governor's argument. First, the argument misconstrues the nature of the Senate proceedings. Second, the Governor's argument incorrectly assumes that his constitutional rights will be infringed unless this Court intervenes in the Senate proceedings.

## NATURE OF IMPEACHMENT PROCEEDINGS

The Arizona Constitution contains two brief paragraphs describing impeachment. After stating that the state House of Representatives "shall have the sole power of impeachment," the Constitution provides:

All impeachments shall be tried by the Senate, and, when sitting for that purpose, the Senators shall be upon oath or affirmation to do justice according to law and evidence, and shall be presided over by the Chief Justice of the Supreme Court.

Ariz. Const. art. 8, pt. 2, § 1.

The Constitution also states:

No person shall be convicted without a concurrence of two-thirds of the Senators elected. The Governor and other State and judicial officers, except justices of courts not of record, shall be liable to impeachment for high crimes, misdemeanors, or malfeasance in office, but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust, or profit in the State. The party, whether convicted or acquitted, shall, nevertheless, be liable to trial and punishment according to law.

Ariz. Const. art. 8, pt. 2, § 2. The text of these provisions confirms the lessons of history: nomenclature aside, trial in the Senate is *not* the equivalent of a criminal trial within the judicial system.

The Arizona constitutional provisions dealing with impeachment are structurally quite similar to the impeachment provisions contained in the federal Constitution.[1] Actually, state constitutional provisions on impeachment generally follow the federal system adopted by the delegates to the Constitutional Convention of 1787. *Kinsella v. Jaekle,* 192 Conn. 704, 720, 475 A.2d 243, 252 (1984). The framers of our national Constitution considered and rejected a judicial role in the impeachment process, fearing that any judicial involvement would encroach upon the legislative prerogative. THE FEDERALIST, No. 65 (A. Hamilton).[2] Instead, the delegates decided that impeachment would be a method of "national inquest" into the actions of public officers. They concluded that the origination of the inquiry and its resolution should rest with the people's representatives. *Id.; see also* THE FEDERALIST, No. 81 (A. Hamilton). They therefore rejected any proposal that the articles of impeachment adopted by the house of representatives would be tried by the judicial branch of government and deliberately selected the senate as the tribunal to try impeachment charges. THE FEDERALIST, No. 65. *See also* J. MADISON, THE DEBATES IN THE FEDERAL CONVENTION OF 1787 WHICH FRAMED THE CONSTITUTION OF THE UNITED STATES OF AMERICA 279, 429, 449, 472, 535, 537, 561 (International ed. 1970) (most complete record of the genesis of the federal Constitution's impeachment provisions).

Alexander Hamilton was quite clear on the political nature of impeachment:

[Impeachment charges] may with peculiar propriety be denominated POLITICAL, as they relate chiefly to injuries done immediately to the society itself. The prosecution of them, for this reason, will seldom fail to agitate the passions of the whole community, and to divide it into parties, more or less friendly or inimical, to the accused. In many cases, it will connect itself with the pre-existing factions, and will inlist all their animosities, partialities, influence and interest on one side, or on the other; and in such cases there will always be the greatest danger, that the decision will be regulated more by the comparative strength of parties than by the real demonstrations of innocence or guilt.

THE FEDERALIST, No. 65. In this, as in many other matters, Hamilton was remarkably prescient.[3]

■ We need not rely only on history or the expressed intent of the founders to determine the nature of impeachment proceedings. The text of the Arizona Constitution corresponds to the federal Constitution and is quite clear. The power of impeachment was not given to the judiciary. The House of Representatives has the "sole power of impeachment," and "[a]ll impeachments shall be tried by the Senate." Ariz. Const. art. 8, pt. 2, § 1. Such provisions were used "with the intention that no other tribunal should have any jurisdiction" of impeachment matters. *Ritter v. United States,* 84 Ct.Cl. 293, 296 (1936), *cert. denied,* 300 U.S. 668, 57 S.Ct. 513, 81 L.Ed. 875 (1937); *see also Kinsella,* 192 Conn. at 713, 475 A.2d at 248–49; *Ferguson v. Maddox,* 114 Tex. 85, 94, 263 S.W. 888, 890–91 (1924); *State ex rel. Trapp v. Chambers,* 96 Okla. 78, 80, 220 P. 890, 892 (1923) ("exclusive jurisdiction" in the legislature). Arizona has also recognized these principles. Removals from office are not

1. *See* U.S. Const. art. 1, § 2, cl. 5 (power of impeachment), art. 1, § 3, cl. 6 (trial procedures and vote requirements), art. 1, § 3, cl. 7 (extent and effect of judgment), art. 2, § 4 (persons subject to impeachment), art. 3, § 2, cl. 3 (jury trial not required).

2. All citations to THE FEDERALIST are to the 1982 Bantam Classic edition. Scholars have

determined that Alexander Hamilton wrote all of THE FEDERALIST's essays signed by "Publius."

3. Hamilton's prophecy was amply fulfilled within a century. *See* M. BENEDICT, THE IMPEACHMENT TRIAL OF ANDREW JOHNSON (1973).

acts within the judicial power. *Ahearn v. Bailey,* 104 Ariz. 250, 253, 451 P.2d 30, 33 (1969).

Based upon the foregoing discussion and the history of our nation, we can only conclude that the power of impeachment is exclusively vested in the House of Representatives and the power of trial on articles of impeachment belongs solely to the Senate. The Senate's task is to determine if the Governor should be removed from office. Aside from disqualification from holding any other state position of "honor, trust, or profit," the Senate can impose no greater or lesser penalty than removal and can impose no criminal punishment. Trial in the Senate is a uniquely legislative *and* political function. It is not judicial.

■ This Court does have power to ensure that the legislature follows the constitutional rules on impeachment. *See Powell v. McCormack,* 395 U.S. 486, 506, 89 S.Ct. 1944, 1956, 23 L.Ed.2d 491 (1969) (quoting *Kilbourn v. Thompson,* 103 U.S. (13 Otto) 168, 199, 26 L.Ed. 377 (1881) (judicial department may determine in appropriate cases whether legislature has exercised its powers in conformity to Constitution). For instance, should the Senate attempt to try a state officer without the House first voting articles of impeachment, we would not hesitate to invalidate the results.

### THE COURT'S POWER OVER LEGISLATIVE PROCEDURE

■ The Governor, however, makes no claim that the Senate is violating the constitutional system of impeachment. Instead, he complains about the Senate's procedures and schedule. He seeks our intervention to curb the Senate. The Constitution wisely leaves impeachment trial procedures and rules to the Senate.[4] Absent a clear constitutional mandate, we refuse to usurp the Senate's prerogatives in this area. Article 3 of the state Constitution prohibits judicial interference in the legitimate functions of the other branches of our government. We will not tell the legislature when to meet, what its agenda should be, what it should submit to the people, what bills it may

draft or what language it may use. The separation of powers required by our Constitution prohibits us from intervening in the legislative process. *See Queen Creek Land & Cattle Corp. v. Yavapai County Board of Supervisors,* 108 Ariz. 449, 451, 501 P.2d 391, 393 (1972); *Renck v. Superior Court,* 66 Ariz. 320, 325–26, 187 P.2d 656, 659–60 (1947); *Crawford v. Hunt,* 41 Ariz. 229, 17 P.2d 802 (1932).

■ The Governor contends that his constitutional rights to due process require this Court to intervene in the Senate to ensure fair treatment. We disagree. We readily acknowledge the Governor is entitled to "due process." However, that concept does not protect the right to hold office as Governor.

Both federal and state constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. amend. 5 and 14; Ariz. Const. art. 2, § 4. The Senate cannot deprive the Governor of life or liberty. The most it may do is to remove Evan Mecham from the governorship and disqualify him from holding any other state office. We do not believe that such a verdict would infringe any property interest protected under our state and national constitutions. As we observed in *Ahearn:*

> [P]ublic offices are public ... trusts, and the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. Every public office is created in the interest and for the benefit of the people, and belongs to them. The right, it has been said, is not the right of the incumbent to the place, but of the people to the officer. * * * The incumbent has no vested right in the office which he holds.

104 Ariz. at 254, 451 P.2d at 34 (quoting *State ex rel. Bonner v. District Court,* 122 Mont. 464, 470, 206 P.2d 166, 169 (1949)). These same principles have been recognized by federal courts in connection with fifth and fourteenth amendment due process claims. *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944);

**4.** *See* L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 4–17 (2d ed. 1988).

*Taylor v. Beckham,* 178 U.S. 548, 575, 20 S.Ct. 890, 900, 44 L.Ed. 1187 (1900).

Thus, we conclude that neither federal nor state due process clauses empower us to intervene and supervise the pending impeachment proceedings. The amicus brief filed by the American Civil Liberties Foundation (ACLF) vividly illustrates the vice of judicial intervention. Noting the protections given by constitutional and court rules to criminal defendants and the lack of comparable Senate rules for the impeachment trial, the ACLF argues that due process requires that the Governor have at least the same safeguards. For example, the ACLF proposes that we give the Governor the right to voir dire senators, to conduct further discovery and to demand recusal of individual senators.

The present alleged lack of these and other rights supposedly makes the impeachment proceedings "fundamentally unfair." We do not agree that the Senate's current rules make the impeachment trial unfair in any sense. However, even if we disagreed with the Senate's approach, we lack the constitutional authority to force the Senate to adopt the rules of procedure applicable to criminal trials. Trial of impeachment articles in the Senate is not a criminal proceeding. It is legislative. It is neither civil nor criminal in nature. It is brought for the sole purpose of deciding whether to remove and disqualify a state officer. The proceedings are neither under the control of the judiciary nor tried in a criminal court. Of course, we have absolutely no reason to assume that the Senate intends to treat the Governor unfairly. We merely hold that the Constitution gives the Senate, rather than this Court, the power to determine what rules and procedures should be followed in the impeachment trial.

## CONSTITUTIONAL RIGHTS

■ We emphasize one additional vital issue. The Governor does have constitutional rights, and those rights will be vindicated by the judicial system when and where necessary. The constitutional rights at issue are those extended to every citizen and criminal defendant. For instance, both the fourth amendment of the federal Constitution and art. 2, § 8 of the Arizona Constitution protect against unlawful search and seizure. If the Senate violates this right, the remedy will be judicial. Other protections are made available to those accused of crime by the fifth and sixth amendments and art. 2, §§ 10 and 24 of the Arizona Constitution. The Governor is entitled to all of these rights. If, as the Governor claims, the impeachment trial endangers any of his constitutional protections, such as the sixth amendment right to a fair and speedy trial, then his remedy will be by appropriate motion in superior court. We certainly do not indulge the presumption that the trial judge will ignore or slight any of the Governor's rights. If the Governor is aggrieved by any judicial ruling, adequate procedures for review are in place. No purpose is served by further recital of specifics. To summarize, the Governor will be given all of the rights that the state and federal constitutions give to every person accused of crime.

■ One final point deserves mention. Most of the rights the Governor demands in the Senate relate to criminal defendants. They are not rights that the state and federal constitutions give to government officials during impeachment proceedings. The Governor may certainly use his constitutional rights without fear of any repercussions in his upcoming criminal trial. He may, for example, refuse to testify before the Senate or decline to answer specific questions there if his testimony will result in his self-incrimination at the criminal trial. *See, e.g., Jackins v. United States,* 231 F.2d 405, 409–10 (9th Cir.1956) (witness at congressional hearing properly refused to answer questions on ground of self-incrimination). Moreover, the state will not be able to use the Governor's recourse to his constitutional rights against him in superior court. ·*See State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1973).

■ In the final analysis, we must recognize, however, that the rights of a person

accused of crime are not co-extensive with the privilege of remaining in public office.

The request for injunction is denied.

CAMERON, HOLOHAN and MOELLER, JJ., concur.

GORDON, C.J., did not participate in the determination of this matter.