180 Ariz. 582 (1994)
886 P.2d 1338
FAIRNESS AND ACCOUNTABILITY IN INSURANCE REFORM, a nonprofit Arizona corporation; Suzanne Harland, Petitioners,
v.
John GREENE, President of the Arizona Senate and Co-chair of Legislative Council; Mark Killian, Speaker of the Arizona House of Representatives and Co-chair of Legislative Council; Representative Don Aldridge, member of Legislative Council; Representative Brenda Burns, member of Legislative Council; Representative David Schweikert, member of Legislative Council; Representative Art Hamilton, member of Legislative Council; Representative Bob McLendon, member of Legislative Council; Representative Polly Rosenbaum, member of Legislative Council; Senator Jan Brewer, member of Legislative Council; Senator John Huppenthal, member of Legislative Council; Senator Tom Patterson, member of Legislative Council; Senator Peter Goudinoff, member of Legislative Council; Senator Cindy Resnick, member of Legislative Council; Senator Peter Rios, member of Legislative Council; Richard B. Mahoney, Arizona Secretary of State; all in their official capacity, real parties in interest, Respondents.
No. CV-94-0317-SA.
Supreme Court of Arizona, En Banc.
December 15, 1994.
*584 Brown & Bain, P.A. by Paul F. Eckstein, Joel W. Nomkin, Phoenix, for petitioners.
Grant Woods, Atty. Gen. by Thomas I. McClory, Eryn M. McCarthy, and John P. Moran, Phoenix, for respondents.
Jones, Skelton & Hochuli by William R. Jones, Jr., Karen L. Fisher, David C. Lewis, Phoenix, for amicus curiae, People for a Fair Legal System.
OPINION
FELDMAN, Chief Justice.
A group styled Fairness and Accountability in Insurance Reform ("FAIR") brought this original proceeding for special action relief[1] against the Arizona Legislative Council ("Council") and Secretary of State Richard D. Mahoney.
We granted oral argument, ordered filing of responsive memoranda, and permitted an opposing group named People for a Fair Legal System ("People") to appear as amicus in opposition to the special action petition. After hearing oral argument and considering the briefs, we accepted jurisdiction and granted relief by order, stating that an opinion would follow. This is that opinion.
FACTS AND PROCEDURAL HISTORY
People advocates "tort reform." The Arizona Constitution currently prohibits the enactment of laws limiting damages for death or personal injury or abrogating causes of action for injuries and bars trial judges from directing a verdict based on contributory negligence or assumption of risk. Ariz. Const. art. 2, § 31; art. 18, §§ 5 and 6. People timely submitted to the secretary of state petitions for an initiative measure ("Proposition 103") that would amend these provisions and allow the legislature to enact laws restricting or ending those prohibitions on legislative and judicial action.
Initiative and referendum procedures are a fundamental part of Arizona's scheme of government. Whitman v. Moore, 59 Ariz. 211, 218-20, 125 P.2d 445, 450-51 (1942). Although our constitution vests legislative authority "in a Legislature, ... the people reserve the power to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, independently of the Legislature; and they also reserve ... the power to approve or reject at the polls any Act, or item, section, *585 or part of any Act of the Legislature." Ariz. Const. art. 4, pt. 1, § 1.
The constitution originally provided only a sketchy procedure for exercising the initiative to enact constitutional amendments and statutes. When an initiative proposal was filed, the secretary of state was to "cause to be printed on the official ballot at the next regular general election the title and number of said measure, together with the words `Yes' and `No' in such manner that the electors may express at the polls their approval or disapproval of the measure." Id., § 1(10). The constitution then stated that the text of such measures should be submitted to the people by the secretary of state, who "shall be guided by the general law until legislation shall be especially provided therefor." Id., § 1(11).
Our first state legislature created more detailed initiative procedures. 1912 Ariz. Sess. Laws, 1st Spec.Sess., ch. 77. The statutory scheme evolved over the years and when People filed Proposition 103 provided that after the filing of an initiative proposal with sufficient signatures, the secretary of state was to submit it to the voters with a publicity pamphlet containing, among other things, "a legislative council analysis of the ballot proposal as prescribed pursuant to 19-124." A.R.S. § 19-123(A)(4) (Supp. 1994). In relevant part, § 19-124(B) states:
Not later than 60 days preceding the regular primary election the legislative council, after providing reasonable opportunity for comments by all legislators, shall prepare and file with the secretary of state an impartial analysis of the provisions of each ballot proposal.... The analysis shall include a description of the measure and shall be written in clear and concise terms avoiding technical terms wherever possible. The analysis may contain background information, including the effect of the measure on existing law....
(Emphasis added).
In accordance with §§ 19-123 and 19-124, Council staff prepared analyses of the initiative measures to appear on the November general election ballot. Its analysis of Proposition 103 described the initiative proposal as follows:
The Constitution of Arizona provides that no law eliminating the right to sue for death or injury and no law limiting the amount of money to be recovered can be enacted. The Constitution of Arizona also provides that in a lawsuit the jury determines all questions relating to the legal defense of "contributory negligence" or "assumption of risk."
This proposition would amend the Constitution by:
1. Allowing the Legislature to enact laws that would eliminate a person's right to bring an action to recover money or benefits for injuries,
2. Allowing the Legislature to enact laws that would limit the amount of money or benefits a person could recover for death or personal injuries, and
3. Allowing the Legislature to enact laws that would remove the defense of "contributory negligence" or "assumption of risk" from the consideration of a jury.
On July 7, 1994, the Council met to consider the staff analyses. A member offered a substitute analysis of Proposition 103 for inclusion in the publicity pamphlet. After discussion, the Council voted 7 to 4 to adopt the substitute analysis and submit it to the secretary of state. It read as follows:
The Arizona Constitution, enacted in 1912, prohibits the people and their elected representatives from controlling what kinds of civil lawsuits are brought into the courts and how they are prosecuted. It also prohibits the people and their elected representatives from limiting the amount of compensation awarded during such lawsuits.
This proposition amends the Arizona Constitution to allow people or their elected representatives to control: 1) the filing and prosecution of civil lawsuits for personal injury and wrongful death; 2) the *586 amount of compensation awarded during those lawsuits.
The secretary of state then began the process of incorporating the Council's analyses in the publicity pamphlet that had to be printed and delivered to each county's board of supervisors no later than the tenth day before the September 13, 1994 primary election. A.R.S. § 19-123(B). On July 11, before the pamphlet could be printed, FAIR filed with the secretary of state the first of a series of objections concerning the text and analysis of a related measure, Proposition 301. FAIR demanded that the secretary of state alter the language that would appear in the publicity pamphlet. Concluding that he had no discretion in the matter, the secretary of state refused FAIR's request in a July 26 letter. Presumably, the secretary of state would have had the same response to any objections about Proposition 103.[2]
FAIR then turned to this court, challenging the analyses of both propositions. As to Proposition 103, FAIR sought an order prohibiting the secretary of state from using the analysis adopted by the Council and directing him, instead, to use the Council's staff analysis even though the Council never adopted it. Following oral argument, we entered an order directing the Council to reconsider the issue and adopt a new analysis of Proposition 103 complying with A.R.S. § 19-124(B).[3] This opinion explains our reasons.
DISCUSSION
A. Jurisdiction
1. Special Action  Discretionary Jurisdiction
This court has original jurisdiction over "mandamus, injunction and other extraordinary writs to State officers." Ariz. Const. art. 6, § 5(1). We exercise this jurisdiction through the special action procedure. Ariz.R.P.Spec.Act. 1 (hereinafter "Rule"). Adopting the practice followed with commonlaw writs, our decision to hear such matters, accept jurisdiction, and grant relief is highly discretionary. Id., State Bar Committee Notes; King v. Superior Court, 138 Ariz. 147, 149, 673 P.2d 787, 789 (1983). In this case, we confront a constitutional issue of first impression and statewide importance. Because of time constraints, there was no adequate remedy in any other procedure or forum. See Rule 1(a); Ingram v. Shumway, 164 Ariz. 514, 516, 794 P.2d 147, 148 (1990). Hence, we accepted jurisdiction of the petition and considered it on the merits.
2. Subject Matter Jurisdiction
a. Separation of Powers
Arizona has a strong constitutional provision ensuring the proper distribution of powers between the three branches of government. Our constitution declares that the powers of government "shall be divided into three separate departments," that each department "shall be separate and distinct," and that each shall not exercise "the powers properly belonging to either of the others." Ariz. Const. art. 3. This court has carefully observed these dividing lines, particularly in cases in which we have been asked to prohibit or require legislative action. See, e.g., Mecham v. Gordon, 156 Ariz. 297, 302, 751 P.2d 957, 962 (1988) ("The separation of powers required by our constitution prohibits us from intervening in the legislative process."); see also Queen Creek Land & Cattle Corp. v. Yavapai County Board of Supervisors, 108 Ariz. 449, 451, 501 P.2d 391, 393 (1972).
Mecham involved a senate impeachment trial seeking the governor's ouster. The governor *587 asked us to curb the senate's allegedly unfair procedures. 156 Ariz. at 302, 751 P.2d at 962. We refused, holding that Ariz. Const. art. 3 prohibited judicial interference in matters constitutionally assigned to the senate and not the courts. Id. We stated that we would not "tell the legislature when to meet, what its agenda should be, what it should submit to the people, what bills it may draft or what language it may use. The separation of powers required by our constitution prohibits us from intervening in the legislative process." Id. In the present case, if the preparation of the initiative analysis is part of the legislative function, as the amicus and respondents claim, our constitution forbids our intervention. We believe, however, that there is a clear distinction between this case and the situation in Mecham and similar matters.
b. Judicial Review
In Mecham, the senate was acting as a legislative body exercising the power of impeachment  a power peculiarly legislative and political. Id. at 301-02, 751 P.2d at 961-62 ("Trial in the senate is a uniquely legislative and political function. It is not judicial."). Although we refused to interfere, we stated clearly that non-interference did not mean a lack of power to review procedure. Id. at 302, 751 P.2d at 962 ("This court does have power to insure that the legislature follows the constitutional rules on impeachment.").
Another recent case illustrates the dividing line between interference with the legislative process and judicial review. In Tilson v. Mofford, 153 Ariz. 468, 737 P.2d 1367 (1987), we considered the very same tort reform issues raised in Proposition 103. In that case, we were asked to order the secretary of state to strike the initiative measure from the ballot. We declined to judge the proposal's text for legality or fairness before its submission to the people, noting that courts "have the power to determine what the law is ... but not what it should contain." Tilson, 153 Ariz. at 470, 737 P.2d at 1369. We then stated that we "do have the duty of insuring that the constitutional and statutory provisions protecting the electoral process (i.e., the manner in which an election is held) are not violated." Id. (citing Kerby v. Griffin, 48 Ariz. 434, 444-46, 62 P.2d 1131, 1135-36 (1936)).
Here, as in Tilson and Kerby, we note that the procedures "leading up to an election cannot be questioned" after the vote but "must be challenged before the election is held." Tilson, 153 Ariz. at 470, 737 P.2d at 1369. Claims of procedural violation in the initiative process "must be reviewed by the court prior to the actual election, while the legality of the substance of an initiative cannot be reviewed until the initiative is adopted ... and is later at issue in a specific case." Id. at 471, 737 P.2d at 1370.
Concurring in Tilson, this writer stated that "the title and wording of the initiative proposal" were misleading and "disguised the proposal's reach." Id. at 473, 737 P.2d at 1372 (Feldman, V.C.J., concurring). Nevertheless, then as now, we remain convinced that a measure's text is part of the legislative or political process and, before adoption, is not subject to this court's review. Id. We do not here consider the text of Proposition 103 but only the procedure putting that text on the ballot.
c. The Present Procedure
The original provision on constitutional amendments commanded that until "a method of publicity is otherwise provided by law, the Secretary of State shall" publish the initiative proposal for a period of ninety days prior to the election. Ariz. Const. art. 21, § 1. This provision was also adopted by reference in art. 4, § 1(11). Accordingly, our first state legislature provided a procedure "in lieu of that set forth" in the constitution. Kerby, 48 Ariz. at 438, 62 P.2d at 1133. The Revised Code of 1928 perpetuated this system and allowed initiative proponents and opponents to file arguments with the secretary of state, who would then print them in a publicity pamphlet to be mailed to all registered voters in the state. Rev.Code Ariz. *588 § 1746 (1928). In 1935, the legislature amended these statutes to provide that the publicity pamphlet must also include, in addition to pro and con arguments, a true copy of the title and text and the form in which the measure would appear on the ballot. 1935 Ariz. Sess. Laws, ch. 62, § 1, codified at Ariz. Code Ann. 60-107 (1939).
In 1972, the legislature provided that the publicity pamphlet should also contain "a legislative council analysis of the ballot proposal as prescribed pursuant to A.R.S. § 19-124." 1972 Ariz. Sess. Laws, ch. 75, § 1. Section 19-124 added more procedural detail, requiring the legislative council to provide an opportunity for comments by all legislators and to file its analysis with the secretary of state "together with a list of popular arguments favoring and opposing each proposal." Id. at § 2. The analyses and arguments in the publicity pamphlet were to follow the proposal to which they referred. A.R.S. § 19-124(C).
Shortly after the 1991 Tilson opinion, the legislature again modified these procedures. The relevant change was to A.R.S. § 19-124(B), which was amended to require the legislative council to provide "an impartial analysis of the provisions of each ballot proposal" and to "include a description of the measure ... written in clear and concise terms avoiding technical terms wherever possible." (Emphasis added.) The analysis could "contain background information, including the effect of the measure on existing law." 1991 Ariz. Sess. Laws, 3d Spec.Sess., ch. 1, § 17.
Thus, the legislature has fulfilled its constitutional duty to provide procedures for placing initiative proposals on the ballot and informing the electorate about them. It has ably handled these matters since 1912. We do not, therefore, enter forbidden territory and tell the legislature what procedures to adopt or "what it should submit to the people, what bills it may draft or what language it may use." Mecham, 156 Ariz. at 302, 751 P.2d at 962. The question before us, to the contrary, is whether the Council complied with the duties assigned it by the legislature. It is the Council, not the legislature, that is the named respondent in this case.
3. The Nature of the Legislative Council  Judicial Review
That, of course, raises a fundamental issue: Does this court have authority to review the Council's acts? We begin with the fact that the legislative council is a statutory agency, established under Title 41, ch. 8 ("Agencies of the Legislative Department"). These entities include the Legislative Council, the Joint Legislative Tax Committee, the Department of Library Archives and Public Records, and the Legislative Governmental Mall Commission. See A.R.S. §§ 41-1301 to 41-1362. As the chapter heading indicates, these agencies perform duties the legislature assigns them by statute. Some duties provide direct aid to the legislative process while others involve only the execution of statutory directives.
The legislative council illustrates this. The legislature created this agency in 1953 to provide a variety of ancillary services. 1953 Ariz. Sess. Laws, ch. 2, § 1. The council is scheduled for "sunset" or termination on July 1, 2000. A.R.S. § 41-3000.09. The council consists of the President of the Senate, the Speaker of the House, and twelve senators and representatives appointed by them. A.R.S. § 41-1301. The council provides services such as bill drafting and research "to improve the quality of legislation." It also performs tasks such as maintaining a legislative reference library and procuring information for legislators and state officers. A.R.S. § 41-1304. Its director also arranges "for publication of annotations of decisions of the supreme court of Arizona" and of all laws enacted during legislative sessions. A.R.S. § 41-1304.01(A). Finally, the council operates, manages, and controls buildings in the state capitol complex. A.R.S. § 41-1304.05.
Given these provisions, it is apparent that the council acts in an administrative or ministerial role, rather than in any legislative capacity, in fulfilling its legislatively imposed duty to prepare and file with the secretary of *589 state an impartial analysis of initiative proposals. A.R.S. § 41-1304(A)(9). The facts of this case also compel that conclusion. We address an initiative proposal that began with the people by virtue of petitions signed by over 400,000 Arizonans. This is not a referendum proposal that the legislature originated and referred for popular ratification.[4] The legislature did not draft the amendment's text, nor was circulation of the initiative petitions a legislative project or act. Thus, the Council's drafting of the analysis facilitated no goal or act set or adopted by the legislature.[5]
Suppose, then, that the Council had prepared an analysis so misrepresenting the initiative that when printed in the publicity pamphlet it guaranteed defeat of People's proposal. Would the Council have such power, insulated from judicial review, notwithstanding the constitution's dictates reserving to the people the right to initiate and propose constitutional amendments?
The answer must be no. This court long ago stated the rule in a case involving enforcement of the procedural law on initiative proposals. The issue then, as now, was whether this court had subject matter jurisdiction of the action. The argument against jurisdiction, then as now, was that courts had no more power "to control by injunction steps in the enactment of [an initiative proposal amending the constitution] by the people than they would in the enactment of legislation by the Legislature...." Kerby, 48 Ariz. at 442, 62 P.2d at 1134. Our answer in that case applies equally to the current controversy:
And, indeed, it seems to us that to hold the court of equity could not intervene to prevent an election being held, when every constitutional and statutory provision setting forth what must be done before holding a legal election had been violated, would result in absurdity. It has been frequently determined that if parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure. If, then, they may not question the procedure before the election because it is an interference with the will of the people [or the legislature], and may not question it afterwards because it is then too late, when may the question be raised? Such a holding would be a travesty of the mandatory provisions of the constitution and the acts of the legislature, for it would mean that they cannot be questioned at all.
* * * * * *
We think, therefore, both on sound reason and upon the unanimous decisions of our own court, that when it appears affirmatively that the constitutional and statutory rules in regard to the manner in which initiative and referendum petitions should be submitted have been so far violated that there has been no substantial compliance therewith, that the courts have jurisdiction to enjoin the election at the suit of an interested citizen. *590 Id. at 444-45, 62 P.2d at 1135-36 (citations omitted, emphasis added).
We conclude, therefore, that this court has jurisdiction. Section 19-124 would be meaningless if this court had no power to review the actions of the Council and determine whether it carried out its statutory responsibility to prepare an impartial analysis and description of Proposition 103. We turn, then, to that question.
B. The Nature of the Analysis
1. The Standard
We must first determine what A.R.S. § 19-124 means by instructing that the legislative council's analysis and description be "impartial." Florida has a similar statute requiring an amendment sponsor to submit a ballot summary describing the substance of an initiative to amend the constitution. The secretary of state then must approve the ballot summary. Fla. Stat. Ann. § 101.161 (Supp. 1992). The statute provides that the amendment summary "shall be an explanatory statement ... of the chief purpose of the measure." Id. The statement is to be "in clear and unambiguous language." Id.
The Florida Supreme Court has held that the purpose of the explanatory statement is to ensure:
that the voters should not be misled and that he have an opportunity to know and be on notice as to the proposition on which he is to cast his vote.... What the law requires is that the ballot [summary] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.
Askew v. Firestone, 421 So.2d 151, 155 (1982) (summary neither described the chief purpose of the amendment nor provided fair notice of the change to be effected; thus, the ballot summary did not comply with the procedural statute and the initiative was struck from the ballot); see also Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139, 140 (1992) (language "must be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring"); In re Title, Ballot Title, Submission Clause, and Summary, Adopted August 26, 1991, Pertaining to the Proposed Initiative on Education Tax Refund, 823 P.2d 1353, 1354-55 (Colo. 1991) (impartial ballot summary must not mislead nor argue for or against proposed initiative).
Although these cases involve different procedures and entities than those created by our law, they do shed some light on the purpose and meaning of A.R.S. § 19-124(B). Our statute's own words, however, provide the most telling indicators. The first provision permits each party advocating or opposing a measure to "file with the secretary of state an argument advocating or opposing" the initiative measure. A.R.S. § 19-124(A) (emphasis added). Then, § 19-124(B) requires the legislative council to provide an "impartial analysis" and "description." (Emphasis added.) Finally, § 19-124(C) directs that the "analyses and arguments shall be included in the publicity pamphlet immediately following" the text of the amendment. (Emphasis added). The impartial analysis and description, therefore, clearly are something different than argument from a proponent or opponent. Obviously, to argue in this statutory context is to advocate. To analyze and describe is to explain without advocacy. If there were any doubt, use of the modifier "impartial" puts it to rest.[6]
From the foregoing, we conclude that the purpose of the required analysis is to assist voters in rationally assessing an initiative proposal by providing a fair, neutral explanation of the proposal's contents and the changes it would make if adopted. Why would the legislature have intended the council to do anything else? The analysis and description must eschew advocacy  argument  for or against the proposal's adoption. Proponents and opponents, including members of the executive and legislative branches *591 of government, can hardly complain about that because § 19-124(A) permits them to file their own arguments and requires the secretary of state to publish those arguments.
We hold, therefore, that A.R.S. § 19-124(B) requires the legislative council to produce a neutral explanation of initiative proposals, avoiding argument or advocacy, and describing the meaning of the measure, the changes it makes, and its effect if adopted.
2. Did the Analysis Adopted by the Legislative Council Meet the Requirements of A.R.S. § 19-124(B)?

Proposition 103 would alter three key provisions of the Arizona Constitution. They are as follows:
Art. 2, 31. Damages for death or personal injuries
No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person.
Art. 18, 5. Contributory negligence and assumption of risk
The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.
Art. 18, 6. Recovery of damages for injuries
The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.
Proposition 103 would amend these constitutional provisions to read:
Art. 2, 31. Damages for death or personal injuries
A law may be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person.
Art. 18, 5. Contributory negligence and assumption of risk
Unless otherwise provided by law, the defense of contributory negligence or of assumption of risk shall be a question of fact and shall be left to the jury.
Art. 18, 6. Recovery of damages for injuries
The right of action to recover damages for injuries may be abrogated, and the amount recovered may be subject to statutory limitation.
For convenience, we restate the analysis adopted by the Council on July 7, 1994:
The Arizona Constitution, enacted in 1912, prohibits the people and their elected representatives from controlling what kinds of civil lawsuits are brought into the courts and how they are prosecuted. It also prohibits the people and their elected representatives from limiting the amount of compensation awarded during such lawsuits.
This proposition amends the Arizona Constitution to allow people or their elected representatives to control: 1) the filing and prosecution of civil lawsuits for personal injury and wrongful death; 2) the amount of compensation awarded during those lawsuits.
This analysis is not a neutral explanation devoid of argument or advocacy. While it may or may not be unfair, it is argument. The summary understates the power already vested in the legislature and the people, as well as the additional powers the amendment would create. Moreover, it makes no reference at all to an important provision of the initiative.
The analysis implies that Arizonans and their legislature presently cannot control civil actions in any way. This notion is incorrect and, arguably, could provide a reason to support Proposition 103. First, the provisions of art. 2, § 31 and art. 18, § 6 apply only to actions for death and injury. They do not, as the analysis intimates, concern all "civil lawsuits." Article 18, § 6, moreover, prohibits only the statutory abolition of injury causes of action. We have never held that the *592 constitution precludes all statutory regulation or control of civil lawsuits. See, e.g., Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9, 19, 730 P.2d 186, 196 (1986) (legislature may regulate method and procedure of cause of action but cannot enact "practically insurmountable defenses"). Indeed, the legislature routinely enacts such regulatory statutes. See, e.g., 1994 Ariz. Sess. Laws ch. 162 (creating 180-day claims procedure and imposing one-year statute of limitation in civil actions against public entities); 1994 Ariz. Sess. Laws ch. 154 (immunizing from civil liability anyone who without malice files a report with insurance fraud unit). Lawyers and judges may dispute the scope of statutory control that art. 18, § 6 permits, but that does not mean there is none. To the extent the analysis suggests that no such power currently exists over any civil action, it does not impartially describe the initiative.
The assertion that the initiative "amends the Arizona Constitution to allow [the] people" to control civil lawsuits and damage awards also crosses well past the blurry line between impartiality and advocacy. The people themselves already have the ability to control, and even abolish, civil actions and damages. The source of this power, indeed, is the very same initiative procedure utilized by People and other Proposition 103 supporters. See Ariz. Const. art. 4, pt. 1, §§ 1 and 2.[7] A disinterested analysis would not suggest the creation of a power that already exists.
The initiative does substantially increase the legislature's power over civil injury actions. An impartial description, however, requires a more frank recognition that the amendment does more than allow the legislature to "control civil lawsuits" and the "amount of compensation awarded." The essence of art. 18, § 6 is its prohibition against abolishing injury actions. Proposition 103 goes beyond conferring additional power to regulate  in removing the abrogation prohibition it permits the legislature to entirely abolish causes of action for injury. The adopted analysis subjectively minimizes this important effect.
Finally, we note that the challenged summary makes no mention of the proposed changes to art. 18, § 5 concerning contributory negligence and assumption of risk. If, as here, an initiative amends a small number of distinct constitutional provisions, an impartial analysis and description must include some reference to each of the affected provisions. See Baker v. Keisling, 312 Or. 385, 822 P.2d 1162, 1167 (1991) (omitting reference to major effect of one of three initiative provisions not a "concise and impartial" summary).
We conclude, therefore, that the initiative summary adopted by the Council was not an impartial analysis and description as required by A.R.S. § 19-124(B). It was advocacy  argument  and therefore did not comply with the statute's requirement.
C. The Appropriate Remedy
Although FAIR argued that it would be appropriate for this court to strike Proposition 103 from the general election ballot due to noncompliance with § 19-124(B), it asked us only to order the Council to draft a truly impartial analysis or, preferably, to adopt the original staff summary. FAIR claims that Kerby established removal from the ballot as a proper remedy for violations of statutory procedure concerning initiative publicity pamphlets. This case differs markedly from Kerby, however, in which passage of time rendered compliance with the applicable statutes impossible. Here, in contrast, sufficient time remained after our order for the Council and secretary of state to comply with A.R.S. §§ 19-123 and 19-124. We do not decide, therefore, under what circumstances removal from the ballot might be appropriate.
*593 The legislature has directed the legislative council to prepare an impartial analysis and description of initiatives in time for the secretary of state to ensure their distribution at the primary election. A.R.S. §§ 19-123 and 19-124. This court's role in reviewing the actions of state agencies is to ensure compliance with the constitution and statutes of this state. See Mecham, 156 Ariz. at 302, 751 P.2d at 962. Our task is to interpret what result a statute requires and to direct state agencies to comply with the laws. It is not our prerogative to act in place of the agency to achieve that result. We declined, therefore, to draft and order the Council to adopt any particular language. See Cook v. Baker, 121 Colo. 187, 214 P.2d 787, 791 (1950) (invalidating legislative board's initiative ballot language, noting a court's "duty in such cases [is] to remand with instructions, pointing out wherein said board is in error"). The appropriate remedy, thus, was to direct the Council to fulfill its statutory duty by reconsidering the issue and adopting an initiative summary complying with A.R.S. § 19-124(B).[8]
CONCLUSION
In summary, we hold that the legislative council's preparation of an initiative analysis pursuant to A.R.S. § 19-124(B) is an administrative and not a legislative function. This court, therefore, has jurisdiction to review such analyses for compliance with the legislature's directive that they be impartial. An impartial analysis and description requires the legislative council to eschew advocacy and to adopt, instead, an evenhanded assessment that neither omits, exaggerates, nor understates material provisions of an initiative measure. The Council's July 7, 1994 analysis failed to meet that standard and thus violated both the spirit and letter of § 19-124(B). If, as in this case, time permits the legislative council to reconsider the issue, that is the appropriate remedy. Accordingly, we ordered the Council to comply with A.R.S. § 19-124(B) by adopting a truly impartial analysis and description.
ZLAKET and MARTONE, JJ., concur.
MOELLER, Vice Chief Justice, dissenting.
SUMMARY
I respectfully dissent. I do so because I cannot agree with the majority's conclusion that "it is apparent that the council acts in an administrative or ministerial role, rather than in any legislative capacity, in fulfilling its duty to prepare and file with the Secretary of State an impartial analysis of initiative proposals." Maj. op. at 588, 886 P.2d at 1344; see also FAIR v. Greene, No. CV-94-0317-SA, order at 2 (Ariz. Aug. 12, 1994) (instructing Legislative Council to reconsider and adopt a new analysis, labelling the Council "an agency of the legislative department and [acting] in a ministerial capacity"). I conclude that the preparation of the impartial analysis as directed by Ariz. Rev. Stat. Ann. (A.R.S.) § 19-124(B) (Supp. 1994) is not a ministerial act, but is instead a legislative act not subject to judicial review.
*594 I believe this court lacks jurisdiction or, at a minimum, should decline to exercise jurisdiction over this matter for three reasons: (1) separation of powers principles prevent judicial review of legislative acts; (2) the actions of the Legislative Council in formulating and voting upon the language of an impartial analysis is not a ministerial act subject to special action review in the nature of mandamus; (3) if the act of the Council is considered an administrative act by an administrative agency, special action review is still inappropriate.
DISCUSSION
I. SEPARATION OF POWERS
In matters relating to initiatives and referenda, the Arizona Constitution directs that state officials "shall be guided by the general law until legislation shall be especially provided therefor." Ariz. Const. art. 4, pt. 1, § 1(11). Acting in accordance with this constitutional mandate, the legislature has enacted appropriate implementing statutes, including the one involved in this case, A.R.S. § 19-124(B), which requires the preparation of an impartial analysis of initiative measures. The legislature has chosen to keep this task entirely within the legislature itself by designating a committee of legislators, called the Legislative Council, to adopt an analysis for the election pamphlet. Id.; A.R.S. § 41-1301(A) (1992); A.R.S. § 41-1304(A)(9) (Supp. 1994). One cannot be a member of the Legislative Council without being an elected representative. In choosing the members of the Council, the Senate President and Speaker of the House are mandated to consider geographic factors so that "each geographical area of the state has representation on the council." A.R.S. § 41-1301(A). Furthermore, A.R.S. § 19-124(B) provides that the Legislative Council shall prepare the impartial analysis "after providing reasonable opportunity for comments by all legislators." Both the makeup of the Council and the process of adopting the analysis show that the Council is a committee of elected representatives acting in their elected capacities.
The separation of powers principle is expressly imbedded in our constitution. Article 3 of the Arizona Constitution states:
The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.
This court has reaffirmed the separation of power principle by stating: "It is well-established by the decisions of this Court that Article III prohibits the intervention of the judicial department in the internal workings of the legislative process." Queen Creek Land & Cattle Corp. v. Yavapai County Bd. of Supervisors, 108 Ariz. 449, 451, 501 P.2d 391, 393 (1972). I believe the majority's order of August 12, 1994, requiring the Council to redeliberate and adopt a different analysis is a judicial intrusion into the legislative process that is prohibited by Article 3 of our constitution.
The majority cites cases from other states in which courts have judicially reviewed language prepared to accompany ballot measures. However, a review of states that have "impartial summary" or "impartial analysis" statutes for ballot measures shows that in those states the analysis or summary is either done by unelected officials[9] or is done *595 by an elected official under statutes expressly conferring jurisdiction on courts to review the decision.[10]
Arizona differs markedly from those other states because in Arizona the analysis is done entirely by elected legislators and there is no express grant of jurisdiction for any court to review. Adams v. Bolin, 74 Ariz. 269, 285, 247 P.2d 617, 628 (1952) ("In the absence of express statutory power, the courts are without jurisdiction to interfere ... with the exercise of the legislative function."). In Mecham v. Gordon, 156 Ariz. 297, 302, 751 P.2d 957, 962 (1988), we stated,
Article 3 of the state Constitution prohibits judicial interference in the legitimate functions of the other branches of our government. We will not tell the legislature when to meet, what its agenda should be, what it should submit to the people, what bills it may draft or what language it may use. The separation of powers required by our Constitution prohibits us from intervening in the legislative process.
I believe that this court lacks authority to order the Council, a legislative body acting in a discretionary manner, to adopt a different analysis. See 52 Am.Jur.2d Mandamus § 131 (1970):
[I]n view of the separation [of powers] ... mandamus will not issue to compel a state legislature or its officers to exercise their legislative functions, or to control its action with respect to duties involving the exercise of discretion....
Because the Council, in adopting an analysis, acts as a legislative body and because this court does not have express jurisdiction to review its decisions, the constitution commands us to refrain from exercising jurisdiction in this case.
II. SPECIAL ACTION IN NATURE OF MANDAMUS
Even if this court were to get beyond the separation of powers problem, the nature of the duty of the Legislative Council makes special action relief inappropriate. The special action in this case would have been labelled a request for mandamus under the traditional procedures. See, e.g., State Bd. of Barber Examiners v. Walker, 67 Ariz. 156, 192 P.2d 723 (1948). The rules for special actions were not intended to, and did not, create any new claims. Rule 1(a), Ariz.R.P.Special Actions. Instead, the special action rules were intended to provide relief historically provided by the traditional writs. Id.
In determining whether mandamus is appropriate to compel action by a government official, the dispositive inquiry is whether the *596 official's duty is "ministerial" or "discretionary." 52 Am.Jur.2d Mandamus § 73 (1970) ("The controlling question ... is whether the thing sought to be enforced is the performance of a ministerial act which it is clearly the legal duty of the officer to perform without any inquiry into facts on his part."). When an official fails to perform a mandatory ministerial duty, this court has the power of mandamus to order the officer to act as required by law. See, e.g., Industrial Dev. Auth. v. Nelson, 109 Ariz. 368, 377, 509 P.2d 705, 714 (1973); Rhodes v. Clark, 92 Ariz. 31, 35, 373 P.2d 348, 350 (1962); Walker, 67 Ariz. at 162, 192 P.2d at 726-27. If, on the other hand, the duty is discretionary, the court cannot compel performance. As early as 1881, the Supreme Court of the Territory of Arizona stated,
The writ of mandate lies to compel an inferior court, board, tribunal, or officer to act, but never to command how to act, unless the act be purely ministerial. If the act sought for be judicial or discretionary in its character, no court by its writ of mandate can command what this action shall be, much less can it command how and what the said action shall be after he or it has already fully acted upon the matter, no matter how erroneously.
Osborn v. Clark, 1 Ariz. 397, 398, 25 P. 797, 797 (1881); see also Graham v. Moore, 56 Ariz. 106, 109, 105 P.2d 962, 964 (1940); Dorrington v. Board of Supervisors, 8 Ariz. 4, 6, 68 P. 541, 542 (1902); Territory ex rel. Sherman v. Board of Supervisors, 2 Ariz. 248, 251, 12 P. 730, 731 (1887).
In Winsor v. Hunt, 29 Ariz. 504, 243 P. 407 (1926), this court defined "ministerial duty" as "`a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.'" Id. at 514, 243 P. at 411 (quoting Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 498, 18 L.Ed. 437 (1866)). For example, in Walker, this court found that the Board of Barber Examiners violated a ministerial duty in failing to issue a license where the petitioner satisfied all the requirements to obtain the license. 67 Ariz. at 168, 192 P.2d at 729. In Williams v. Parrack, 83 Ariz. 227, 319 P.2d 989 (1957), we held that the Phoenix City Council, in refusing to submit a valid initiative petition to the voters, violated a duty that was purely ministerial. Id. at 230, 319 P.2d at 991. Also, in Adams v. Bolin, 74 Ariz. 269, 247 P.2d 617 (1952), we determined that the certification of a referendum by the Secretary of State to the clerks of the boards of supervisors "is manifestly a ministerial act not requiring discretion." Id. at 285, 247 P.2d at 628.
The analysis performed by the Legislative Council is vastly different from the ministerial acts typically involved in mandamus actions. The nature of the relief granted by the court itself demonstrates this. When the majority decided this case after oral argument on August 12, 1994, it specified no precise act that the Council was to perform. Instead, it remanded the matter to the Council for more deliberation, for more analysis, and for more voting. The Council had debated alternatives in an open hearing and it had rejected the staff's analysis in favor of an alternative advanced by one of its members. The Council members were acting in their elected, not ministerial, capacities in considering, weighing and approving the analysis. Preparing an impartial analysis of a complex initiative proposal is far from a "simple" ministerial act. See Winsor, 29 Ariz. at 514, 243 P. at 411.
This is not to say that none of the Council's duties is ministerial. See, e.g., A.R.S. § 41-1303(B) (1992) (prepare annual report); id. § 41-1304(A)(5) (Supp. 1994) (maintain legislative reference library). Of all the duties assigned to the Legislative Council, however, the one that most resembles the preparation of the impartial analysis is bill drafting. Id. § 41-1304(A)(1) (Supp. 1994). A great deal of discretion is involved both in drafting bills and adopting impartial analyses, and this court should no more interfere in the latter than in the former. Activities such as bill drafting are not judicially reviewable. Mecham, 156 Ariz. at 302, 751 P.2d at 962 (1988) ("We will not tell the legislature ... what bills it may draft or what language it may use.").
*597 Judicial review of the language of the impartial analysis is much akin to judicial review of the language of an initiative itself. This court has no power to review such language. Tilson v. Mofford, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987). The special concurrence in Tilson states:
Believing ... that the democratic process requires questions of fairness in drafting to be resolved first by the electorate rather than the judiciary, I concur in the holding that the judicial branch has no power to keep the proposal off the ballot simply because we might believe the matter has not been submitted to the people in a fair form.
Id. at 473, 737 P.2d at 1372 (Feldman, V.C.J., concurring). Tilson involved the language of the initiative itself, whereas this case deals with an analysis in a publicity pamphlet. Doubtless, the language in the initiative is more important than the language in a publicity pamphlet. Yet this court held that it does not have the power to review the language in the initiative before the vote. Id. at 470, 737 P.2d at 1369. Similar considerations should lead us to conclude that we do not have the jurisdiction to review the language adopted for the publicity pamphlet by the Legislative Council.
The majority opinion invites the routine challenge in this court of Legislative Council analyses over the very subjective meaning of the words "impartial analysis" in section 19-124(B). Indeed, the order granting relief to petitioners has already spawned a "copycat" petition asking this court to review the language of another initiative summary. People's Choice Initiative Comm. v. Hogue, No. CV-94-0373-SA (Ariz. Sept. 7, 1994).
On a more practical level, what would this court have done if the petitioners had again protested the language adopted by the Legislative Council after this court's order? If the court again agreed with the petitioners, would the court step in and write the language to meet its view of impartiality? Would it prohibit the use of the adopted language on the pamphlet? These practical considerations are of the sort that have led to the adoption of the principle limiting mandamus to ministerial duties.
III. REVIEW OF ADMINISTRATIVE DECISIONS
The majority also labels the Legislative Council as an administrative agency. Maj. op. at 588, 886 P.2d at 1344 ("[T]he legislative council is a statutory agency ... [acting] in an administrative or ministerial role."). The actions of the Legislative Council in which the members deliberate in their elected capacities do not lend themselves to being termed administrative, but assuming, arguendo, that they are, jurisdiction still does not lie.
Judicial review of administrative decisions is governed by the Administrative Review Act (ARA), A.R.S. §§ 12-901 to 12-913 (1992). Under the ARA, jurisdiction to review actions by an agency lies in the superior court, not the supreme court. A.R.S. § 12-905(A); Rhodes v. Clark, 92 Ariz. 31, 37, 373 P.2d 348, 352 (1962) (ARA "was passed to provide a plain, speedy, and adequate remedy for all adverse administrative determinations covered thereby."); see Rosenberg v. Arizona Bd. of Regents, 118 Ariz. 489, 493, 578 P.2d 168, 172 (1978) (holding that writ of mandamus was inappropriate to grant relief from agency determination because ARA provided adequate remedy). Furthermore, the definition of agency specifically excludes those "in the judicial or legislative departments of the state government." A.R.S. § 12-901(1). Therefore, the analysis of the Legislative Council, a branch of the legislature, is not subject to review as an administrative agency in this court or any other.
CONCLUSION
For each of the reasons stated, I would dismiss the petition for special action.
CORCORAN, J., concurs.
NOTES
[1] In Arizona, special action relief is the modern equivalent of common law writs such as mandamus and prohibition. See Rule 1(a), Rules of Procedure for Special Actions.
[2] The secretary of state argues that his presence in this case is only a technicality. He contends that the statutes give him no discretion to draft, amend, or modify submittals filed by proponents, opponents, or the legislative council. We agree. A.R.S. §§ 19-123 and 19-124 provide that certain matters may be filed with his office and when so filed shall be included in the publicity pamphlet. Thus, although the secretary of state is subject to the direction of the court, absent any judgment directing the secretary to take a particular action, the secretary's office must simply accept the filings and publish them as the statute directs.
[3] We declined jurisdiction of the Proposition 301 matter.
[4] The constitution may be amended either by proposals originating with the people (initiative) or by proposals submitted to the people by the legislature (referendum). See Ariz. Const. art. 4, pt. 1, § 1(1)-(3).
[5] We disagree with the dissent's assertion that adopting an impartial analysis is a legislative function because the legislative council is comprised of members of the legislature. Slip op. at 25-28. "[A]cts necessary to carry out the legislative policies and purposes already declared by [the legislature] are administrative." Pioneer Trust Co. v. Pima County, 168 Ariz. 61, 65, 811 P.2d 22, 26 (1991) (citing Lincoln Property Co. No. 41, Inc. v. Law, 45 Cal. App.3d 230, 119 Cal. Rptr. 292, 294 (1975) ("The power to be exercised is legislative in its nature if it prescribes a new policy, or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself ....")). Clearly, in preparing an impartial initiative summary, the legislative council members, even though they are also legislators, are simply pursuing the plan already adopted by the legislature in A.R.S. § 19-124(B). See also Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972) ("Legislative acts are not all-encompassing ... they must be an integral part of the deliberative and communicative processes ... with respect to the consideration and passage or rejection of proposed legislation ....").
[6] "Impartial" means "[f]avoring neither; disinterested; treating all alike; unbiased; equitable, fair, and just." BLACK'S LAW DICTIONARY 752 (6th ed. 1990).
[7] People disputes this notion by noting that Ariz. Const. art. 22, § 14 provides that any "law which may not be enacted by the Legislature under this Constitution shall not be enacted by the people." That argument, however, ignores the people's historic power to enact constitutional amendments by initiative. The only additional power Proposition 103 allows the people is to do by statutory initiative what previously had to be done by an initiative amendment.
[8] After our order, the Council adopted and submitted the following summary:

The Constitution of Arizona provides that no law limiting or prohibiting the right to sue for death or injury and no law limiting the amount of money to be recovered can be enacted. The Constitution of Arizona also provides that in a lawsuit the jury determines all questions relating to the legal defense of "contributory negligence" or "assumption of risk."
Proposition 103 would amend the Constitution of Arizona to:
1. Allow the Legislature or the people to enact laws that could limit or prohibit a person from bringing a lawsuit to recover money or benefits for injuries;
2. Allow the Legislature or the people to enact laws that could limit the amount of money or benefits a person could recover for death or personal injuries, and
3. Allow the Legislature or the people to enact laws that could remove the defense of "contributory negligence" or "assumption of risk" from the consideration of a jury.
This summary appeared in the publicity pamphlet for the November 8, 1994 general election. We note this language for purposes of completeness and do not pass on its propriety or compliance with A.R.S. § 19-124(B). For the same purpose, it is appropriate to note that voters at the 1994 general election rejected Proposition 103, 61% of the ballots voting "NO."
[9] Alaska Stat. § 15.58.020(6) (1988) (Legislative Affairs Agency prepares neutral summary for election pamphlet).

Elections  Code Reorganization, Ch. 920, § 2, 1994 Cal. Legis. Serv. 4208-09 (West) (Legislative Analyst prepares impartial analysis of measure); id. at 4209 ("Any voter may seek writ of mandate requiring any [ballot measure description] to be amended or deleted from the ballot" with venue in Sacramento County).
Colo. Const. art. 5, § 1(7.5)(a)(II) ("Nonpartisan research staff of the general assembly" shall prepare a ballot information booklet with a "fair and impartial analysis of each measure."); id. § 1-40-124.5 (preparation of ballot information pamphlet by director of research of the legislative council of the general assembly).
D.C. Code Ann. § 1-286 (1992) (appointed Board of Elections and Ethics has power to propose accurate summary of initiative; superior court has power of mandamus to order Board to correct inaccurate summary); id. § 1-1320(c) (1992 & Supp. 1994) (Board shall prepare a true and impartial statement of measure); id. § 1-1320(e) (jurisdiction over disputes concerning the statement in superior court).
Fla. Stat. Ann. § 101.161 (West Supp. 1994) (initiative sponsor provides an unambiguous explanatory statement of amendment or measure for approval by the Secretary of State).
Or. Rev. Stat. § 251.205 (1989) (committee of two proponents, two opponents, and a fifth member appointed by the four draft explanatory statement); id. § 251.215 (committee shall prepare and file with Secretary of State an impartial statement explaining the measure); id. § 251.235 (any dissatisfied person may petition the supreme court to review statement and certify different explanation).
Utah Code Ann. § 20-11a-8(4)(c) (Supp. 1994) (office of legislative research and general counsel provides analysis for voter information pamphlets); id. § 20-11a-6(1) (1991) (director of research of the legislative council shall prepare impartial analysis of measure).
[10] Alaska Stat. § 15.45.180(a) (1988) (Lieutenant Governor and Attorney General draft the impartial summary of initiative for ballot); id. § 15.45.090 (Lieutenant Governor prepares impartial summary for petitions); id. § 15.45.240 (jurisdiction in superior courts).

Ark. Code Ann. § 7-9-107(b) (Michie 1993) (Attorney General to approve or substitute the ballot title of petitions); id. § 7-9-107(d)-(e) (judicial review with supreme court).
Wyo. Stat. § 22-24-117 (1992) (Secretary of State and Attorney General provide impartial summary); id. § 22-24-122 (jurisdiction in district court of Laramie County).