451 P.2d 30

John L. AHEARN, Member of the Industrial Commission, Petitioner,

v.

Richard E. BAILEY, Robert W. Knox and Edmund Law, Respondents.

No. 9522.

Supreme Court of Arizona.

In Banc.

Feb. 26, 1969.

John L. Ahearn, in pro. per. and Allen L. Feinstein, Phoenix, for petitioner.

Gary K. Nelson, Atty. Gen., by William E. Eubank, Chief Asst. Atty. Gen., Phoenix, for respondents.

STRUCKMEYER, Justice.

This is an original proceeding in quo warranto brought on the authority of A.R.S. § 12–2043 by John L. Ahearn to test the right of respondents to hold office as members of the Industrial Commission of Arizona.

In January, 1966, petitioner was appointed by the Governor of Arizona to serve a six (6) year term as a member of the Industrial Commission of Arizona. Petitioner qualified and took office after his appointment was confirmed by the State Senate as provided by A.R.S. § 23–101, subsec. B.[1] At the time of petitioner's appointment the Industrial Commission was composed of three (3) members, whose terms were six (6) years.[2]

Thereafter, the 4th Special Session of the 28th Legislature in May of 1968, amended paragraph B of A.R.S. § 23–101, shortening the terms of the members so that

---

1. "ARTICLE 1. IN GENERAL
   "§ 23–101. Members; qualifications; appointment; terms; compensation; bond; removal
   "A. There shall be an industrial commission of Arizona.
   "B. The commission shall be composed of three members appointed by the governor by and with the advice and consent of the senate. Each member shall be appointed for a term of six years and the term of one member shall expire January 8 of every even-numbered year. Not more than two members of the commission shall belong to the same political party."

2. Frank G. Murphy for a term ending January 8, 1970
   John L. Ahearn for a term ending January 8, 1972

   Bruce C. Thoeny was appointed on January 8, 1968, for a term ending January 8, 1974.

they ended on January 8, 1969,[3] and increasing the number of members to five (5) by new appointment of the Governor. The three (3) respondents in this action were appointed as new Commissioners on the same day, together with Commissioners Murphy and Thoeny who were reappointed.

It is petitioner's position that the Legislature could validly increase the size of the Commission from three (3) to five (5) members but it could not by shortening his term remove him from office because it is in violation of Article III of the Constitution of Arizona in that it is an exercise by the Legislature of a power belonging to the Executive.

Article III of the Constitution of Arizona, A.R.S. provides for the distribution of power among the three departments of government, the Legislative, the Executive and the Judicial.

## "ARTICLE III

### DISTRIBUTION OF POWERS

"The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

■ The concept of the separation of powers is fundamental to constitutional government as we know it. See Monte-

squieu, Spirit of the Laws (1748) Book XI, and Federalist Papers, Nos. 47 and 48. This language from Humphrey's Executor v. United States, 295 U.S. 602, 629, 55 S.Ct. 869, 874, 79 L.Ed. 1611 has often been quoted:

"The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution; and in the rule which recognizes their essential coequality."

■ We have in the past recognized the independence of each branch of government and the constitutional injunction that no department may exercise the powers belonging to the others:

"All of the Constitutions of the different states recognize clearly the division between the three great branches of the government. All of them express more or less clearly the intent that each of said branches is to be independent of the other two, except as the Constitution provides otherwise, and that, except as the Constitution authorizes it, neither can exercise any power which directly or indirectly tends to limit the constitutional independence and power of the other branches of the government. Article 3, Constitution of Arizona. These

3. "Sec. 4. Sec. 23-101, Arizona Revised Statutes, is amended to read:
"23-101. INDUSTRIAL COMMISSION; MEMBERS; QUALIFICATIONS; APPOINTMENT; TERMS; COMPENSATION; BOND; REMOVAL
"A. There shall be an industrial commission of Arizona.
"B. The commission shall be composed of five members appointed by the governor with the consent of the senate. Each member shall be appointed for a term of five years. The terms of the members serving on the commission on the effective date of this section shall terminate January 8, 1969. Of the mem-

bers of the commission first appointed, one shall serve for a term ending January 8, 1970, and one each for terms ending one, two, three, and four years thereafter. Appointment to fill a vacancy caused other than by [by] expiration of term shall be for the unexpired portion of the term. Not more than three members of the commission shall belong to the same political party. The chairman of the commission shall be appointed by and serve at the pleasure of the governor. The members of the commission shall have been residents of the state for five years immediately preceding their original appointment."

general principles are so obvious to any one who is at all familiar with the constitutional history of England and America that no citations are necessary to support them, although hundreds of cases exist which declare them either in whole or in part. But with the natural and human desire for power, the representatives of the different branches of the government have at times, either intentionally or unintentionally, attempted to encroach on each other, * * *." Crawford v. Hunt, 41 Ariz. 229, at 237, 17 P.2d 802, at 805.

By Article 5, § 4 of the Constitution of Arizona, the Governor is required to transact all executive business and "He shall take care that the laws be faithfully executed." Chief Justice Taft in speaking of the powers of the President of the United States said in Myers v. United States, 272 U.S. 52, 117, 118, 47 S.Ct. 21, 25, 71 L.Ed. 160:

"* * * As he is charged specifically to take care that they be faithfully executed, the reasonable implication, even in the absence of express words, was that as part of his executive power he should select those who were to act for him under his direction in the execution of the laws. The further implication must be, in the absence of any express limitation respecting removals, that as his selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible. Fisher Ames, 1 Annals of Congress, 474. It was urged that the natural meaning of the term 'executive power' granted the President included the appointment and removal of executive subordinates. If such appointments and removals were not an exercise of the executive power, what were they? They certainly were not the exercise of legislative or judicial power in government as usually understood."

We ask the same question propounded by the Chief Justice. If appointments and removals are not an exercise of executive power in Arizona, what are they? Certainly not Legislative or Judicial as usually understood.

██ The Governor is charged with the duty of taking care that the laws are faithfully executed. He must, therefore, have the power to select subordinates and to remove them if they are unfaithful. Accordingly, we conclude that the power to remove is an executive function and while the Legislature may prescribe the grounds or causes for removal, as it has done by A.R.S. § 23–101 subsec. D, see Holmes v. Osborn, 57 Ariz. 522, 115 P.2d 775, it may not directly undertake to remove a public officer except as granted under the constitutional power of impeachment, Art. 8, part 2, Constitution of Arizona.

Respondents do not seriously quarrel with the proposition that the power of appointment and removal of public officers lies in the Executive Department. Their position is that it is within the exclusive province of the Legislative Department to create public offices and that necessarily the power to abolish such offices may be exercised by the Legislature at will. Respondents' position is correct subject to the limitations hereinafter discussed.

██ In Crawford v. Hunt, supra, an action by the legislative examiner for his salary, the appropriation for which had been vetoed by the Governor, we held that the Governor could not indirectly abolish that office by vetoing the appropriation. We said that the office of legislative examiner was not a constitutional office, but one created by statute by the Legislature and "such being the case the Legislature has the power to abolish the office." We have also held that, subject to constitutional limitations, the right of the Legislature to create and abolish offices in the public interest necessarily includes the power to fix or alter the term, the mode of appointment and compensation. Barrows v. Garvey, 67 Ariz. 202, 193 P.2d 913; High v. State, 14 Ariz. 429, 130 P. 311.

Respondents rely principally on the cases of Lockwood v. Jordan, 72 Ariz. 77, 231 P.2d 428, and Shute v. Frohmiller, 53 Ariz. 483, 90 P.2d 998. These cases are inapposite. They concern the powers and duties of the Attorney General and not the Governor. By the Constitution, Article 5, § 9 "The powers and duties of Secretary of State, State Treasurer, State Auditor, Attorney-General, and Superintendent of Public Instruction shall be as prescribed by law." The cases cited are authority for the proposition that the powers and duties of the office of Attorney General are wholly within the control of the Legislative Department. That is not the case here, for the Governor is required by the Constitution to execute the laws.

■ Respondents, nevertheless, resist the issuance of the writ sought in the case on the principle that the legislative power to abolish an office is supreme. But the absolute power to abolish an office does not necessarily include the right to remove an office holder. We are in agreement with the Supreme Court of Pennsylvania in its statement:

" * * * Obviously, the elimination of an office poses quite a different problem from the removal of an incumbent of an existing office and is wholly irrelevant to the latter issue. Legislative power to abolish unneeded positions established by it is unquestionable; legislative power to regulate removal of an officer, however, raises a constitutional question unrelated to problems of abolishing an office." Bowers v. Pennsylvania Labor Relations Board, 402 Pa. 542, 167 A.2d 480, 500.

■ At the onset, it should immediately be stated that there is no vested right in the office holder to compel the continuation of an office:

" * * * With us, public offices are public agencies or trusts, and the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. Every public office is created in the interest and for the benefit of the people, and belongs to them. The right, it has been said, is not the right of the incumbent to the place, but of the people to the officer. * * * The incumbent has no vested right in the office which he holds, * * *." State ex rel. Bonner v. District Court, 122 Mont. 464, 206 P.2d 166, at 169.

■ Moreover, an office holder may not complain if his office is terminated where there is a legislative plan of reorganization evidencing a reasonable necessity for termination. See e.g. Hall v. Strickland, Fla., 170 So.2d 827, and Lanza v. Wagner, 11 N.Y.2d 317, 229 N.Y.S.2d 380, 183 N.E.2d 670, 97 A.L.R.2d 344.

It has sometimes been said that the Legislature may abolish the office but not the officer. Malone v. Williams, 118 Tenn. 390, 103 S.W. 798. So, the principle is firmly established in a number of jurisdictions that if a Legislature abolishes an office and puts in its place another by the same or different name but with substantially the same duties, it will be considered a device to unseat the incumbent, thereby encroaching upon the authority of the executive.

A plain instance of the application of this principle is to be found in Commonwealth ex rel. Kelley v. Clark, 327 Pa. 181, 193 A. 634. There, the Civil Service Commission of the City of Philadelphia consisted of three (3) Commissioners elected by the City Council for a term of four years. The General Assembly enacted a statute that the Mayor would appoint two (2) Commissioners and the City Controller appoint two (2) Commissioners and the four would elect a fifth Commissioner. It was also provided that the Act would become immediately effective. The court said:

" * * * The acts considered together, as they must be, make it plain that the intention was to oust the commissioners elected by the city council and put in their places commissioners appointed by the mayor, the controller, and their appointees. There was no intention to abolish the office; language in the Act of May 19, 1937, that it is abolished is mere

subterfuge. The intention to the contrary is too obvious. The best that can be said is that the Legislature attempted to abolish and continue the office at one and the same time, an impossible thing. Such a device cannot succeed, and, while the question is a new one for this court, various other courts have so declared. * * * " 327 Pa. at p. 186, 193 A. 634, at p. 636.

In State ex rel. Hammond v. Maxfield, 103 Utah 1, 132 P.2d 660, the majority of the Utah Supreme Court found that the law had crystallized in this country since the founding of the Republic permitting the abolishment of public office along these lines. First, if an office is abolished and no substitute created, the office may be so abolished whatever may be the reason for its abolishment. Second, if the Legislature abolishes two or more offices with substantially the same duties or different duties and combines the duties under one office by a different name or even the same name for the reasons of economy or genuine reorganization, the abolishment is permissible. Third, if in the abolishment of an office, a new office is created which has substantially new, different or additional functions, duties or powers so that it is an office different from the one abolished even though it also embraces all of the duties of the old office, it will be considered a proper abolishment of the old.

In State v. Maxfield, supra, the Utah Legislature enacted a statute providing that the terms of office of the members of the State Road Commission would terminate when the members of a new Engineering Commission were appointed and qualified. It was recognized that the Legislature may shorten terms of office if it fitted naturally into a scheme of reorganization, the Utah Court saying:

"It must be kept in mind that the reasoning which * * * concludes that a term cannot be shortened when the same term is in effect continued under the guise of a new term, rests fundamentally on the composite proposition that while the right to abolish an office is in the power which created it, the right to remove an officer (with certain exceptions) is generally a prerogative of the power which appoints the officer (whether at pleasure or for cause depending upon the statute creating the office) and therefore the legislature cannot use its power to create or abolish in such a way as to encroach on the power to remove." 103 Utah at p. 12, 13, 132 P.2d at p. 665.

In the present case, the 28th Legislature was called into the 4th Special Session on May 8, 1968, by the Governor who urged it to consider "any and all matters affecting the Industrial Commission, employers' liability laws, workmen's compensation, occupational disease disability and any matter relating thereto." The Legislature thereafter enacted House Bill No. 1, an "Act relating to the Industrial Commission" embracing some sixty-seven pages. The principal effect of the Act was to remove the rate making powers from the jurisdiction of the Commission and the investment and control of the State Insurance Fund. In examining House Bill No. 1 it is apparent that A.R.S. § 23–101, subsec. B shortening the terms of the existing Commissioners has no discernible relationship to the objects to be accomplished in the remainder of the enactment. Indeed, the opposite appears, for the Legislature made provisions for immediate appointments to the same offices just terminated, thereby recognizing the need for a continuation of the offices rather than their abolishment.

We think the law applicable to legislative reorganization is particularly well considered in the Pennsylvania case of Suermann v. Hadley, 327 Pa. 190, 193 A. 645. Pennsylvania has a constitutional provision which by its Article 6, Section 4, P.S. all office holders may be removed on conviction of misbehaviour in office but appointed officers "may be removed at the pleasure of the power by which they shall have been appointed." This constitutional provision is in substance the case law as it has developed in Arizona. The Penn-

sylvania Assembly enacted certain statutes pertaining to the Board of Revision of Taxes which concededly constituted a reorganization. In the reorganization the Legislature shortened the terms of the Board. The Pennsylvania Court said:

"Generally speaking, in analyzing governmental reorganization statutes * * * the difficulty encountered is in determining whether the change is of sufficient moment to sustain a finding of legislative intent to abolish the offices affected and to oust the incumbents as an incident thereof, or whether the Legislature merely proposes the removal of incumbents, in contravention of the constitutional barrier (article 6, section 4) relating to the removal of appointed or elected officers.

\* \* \* \* \* \*

"Reorganization of an existing system or department of government does not necessarily require abolition of prevailing offices; in fact, generally that is an unusual procedure, and the intent to wipe out the old structure must be clearly apparent. Abolishment of office carries with it the idea of doing away with the identical office perpetually; this is not accomplished by stating in one act that the office is abolished, and in another or the same act providing for the recreation of the same office or one substantially similar. When the Legislature so acts, it is simply attempting a removal from office in violation of article 6, section 4, and the act falls. [Citation]

"But, here, leaving out all consideration of the character of the changes in the department affected, the Legislature did not even purport to abolish the offices of the present board members; it merely terminated their term, or, in other words, attempted to remove them.

\* \* \* \* \* \*

"Section 8 of Act 'A' (53 P.S. § 4801 note) merely states: 'the terms of the members * * * are hereby terminated.' There is no ambiguity in this clause. The Legislature intended to end the terms of the present members.

"The effect of the termination clause was to remove the members in violation of article 6, section 4, and not to abolish the office. This, however, was a minor feature of the comprehensive plan. The Legislature did not intend to offend the Constitution; therefore, this section must read as though the terminating clause was not contained therein."

▆▆▆ The amended A.R.S. § 23–101, subsec. B reconstituting the Commission as a Commission of five (5) members and truncating the terms of the existing members is but a minor feature of the comprehensive plan. The enlargement of the Commission to five (5) members could have been accomplished without removing the three (3) existing members, thereby encroaching on the Executive Department. Consequently we read the amended Act as though the terminating clause was not contained therein, and hold that the three (3) members occupying the office prior to January 8th, 1969, are the lawful incumbents for the terms specified in their appointments.

We give due weight to the legislative decision that a Board of five (5) members is appropriate to carry out the responsibilities entrusted to the Industrial Commission. However, since the Legislature did not have the power to remove the existing officers, there were only two (2) additional members to be appointed on January 8, 1969. We cannot, of course, say who would have been appointed had the Governor been advised of the correct interpretation of the amended Act. We, therefore, hold that the appointments made on the 8th day of January, 1969, must fail.

It is the order of this Court that a judgment of ouster will issue to the respondents and each of them.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.